UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

---

ALLAN SILBER,

     *Plaintiff,*

     v.

FAMILY ENDOWMENT PARTNERS, LP, MIP GLOBAL, INC., and LEE D. WEISS,

     *Defendants,*

and TD BANK, N.A., and BANK OF AMERICA, N.A.,

     *Trustee Process Defendants.*

---

Docket No.: _____

## VERIFIED COMPLAINT

Plaintiff Allan Silber ("Silber") brings this action against defendants Family Endowment Partners, LP ("FEP"), MIP Global, Inc. aka Mosaic ("Mosaic") and Lee D. Weiss ("Weiss") for: (1) fraud and violation of securities laws arising from Weiss' multiple knowing and intentional misrepresentations made to Silber in order to induce him to purchase limited partnership interests in FEP and five promissory notes issued by FEP in the aggregate principal amount of $750,000; (2) all amounts due and owing to Silber by FEP and Mosaic pursuant to the aforesaid promissory notes which are in default; and (3) an accounting as to the limited partnership interests in FEP acquired by Silber.

## JURISDICTION AND VENUE

This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332 based upon diversity of citizenship of the parties. The amount in controversy exceeds $75,000, exclusive of interest and costs. Federal questions jurisdiction is also proper pursuant to 28 U.S.C. §1331. Venue in this Court is proper pursuant to 28 U.S.C. §1391(a).

## PARTIES

1.      Silber is a businessman residing in Toronto, Ontario, Canada.

2.      FEP is a Delaware limited partnership having a business address at 125 High Street, Suite 1405, Boston, Massachusetts.  FEP is registered with the Securities and Exchange Commission as an investment advisor under the Investment Advisers Act of 1940.

3.      Mosaic is a Delaware corporation having a business address at 255 State Street, Boston, Massachusetts.

4.      Weiss is an individual residing in Newton, Massachusetts.

5.      Trustee process defendant TD Bank, N.A. ("TD Bank") is a nationally chartered bank having branch locations throughout Massachusetts.  Upon information and belief, FEP maintains one or more bank accounts at TD Bank.

6.      Trustee process defendant Bank of America, N.A. ("Bank of America") is a nationally chartered bank having branch locations throughout Massachusetts.  Upon information and belief, Mosaic maintains one or more bank accounts at Bank of America.

## STATEMENT OF FACTS

7.      At all times relevant to the allegations herein, Weiss served as the managing partner of FEP and the president and chief executive officer of Mosaic.

8.      Upon information and belief, Weiss owned a controlling interest and actually exercised control over each of FEP and Mosaic at all times relevant to the allegations herein.

9.      On or about June 6, 2008, Weiss caused FEP to sell 32.111 Class C Units of limited partnership interest, and to issue an Unsecured Senior Promissory Note in the principal amount of One Hundred Thousand Dollars ($100,000) with interest thereon accruing at a rate per annum of ten percent (10%) from and after June 5, 2008 (the "Krouse Note"), to Bradley A. Krouse and Beth Krouse.

10.     On or about June 6, 2008, Weiss caused FEP to sell 32.111 Class C Units of limited partnership interest, and to issue an Unsecured Senior Promissory Note in the principal amount of One Hundred Thousand Dollars ($100,000) with interest thereon accruing at a rate per annum of ten percent (10%) from and after June 5, 2008 (the "Glazer Note"), to William Glazer.

11.     On or about June 6, 2008, Weiss caused FEP to sell 32.111 Class C Units of limited partnership interest, and to issue an Unsecured Senior Promissory Note in the principal amount of One Hundred Thousand Dollars ($100,000) with interest thereon accruing at a rate per annum of ten percent (10%) from and after June 5, 2008 (the "Rash Note"), to ART IV Ben Rash FBO Marc Rash.

12.     On or about June 6, 2008, Weiss caused FEP to sell 32.111 Class C Units of limited partnership interest, and to issue an Unsecured Senior Promissory Note in the principal amount of Three Hundred Thousand Dollars ($300,000) with interest thereon accruing at a rate per annum of ten percent (10%) from and after March 13, 2008 (the "Fink Note"), to Michael Fink.

13.     On or about June 6, 2008, Weiss caused FEP to sell 32.111 Class C Units of limited partnership interest, and to issue an Unsecured Senior Promissory Note in the principal

amount of One Hundred and Fifty Thousand Dollars ($150,000) with interest thereon accruing at a rate per annum of ten percent (10%) from and after March 18, 2008 (the "Feinman Note"), to Michael L. Feinman. (The Feinman Note, Krouse Note, Glazer Note, Rash Note and Fink Note are referred to collectively in this Verified Complaint as the "Notes".)

14.     Interest on each of the Notes was payable annually in arrears on June 6 of each year beginning on June 6, 2009.

15.     Under the terms of the Notes, FEP could elect to pay the interest otherwise due by either (i) increasing the principal amount of the Note by applying an increased interest rate of eleven percent (11%) per annum or (ii) with the consent of the holder of the Note, issuing additional Class C Units in FEP having a value equal to the unpaid interest.

16.     Upon information and belief, no holder of the Notes consented to the issuance of additional Class C Units in payment of interest otherwise due, despite how no interest was paid beginning June 6, 2010.

17.     As such, interest payable under the Notes increased to eleven percent (11%) per annum beginning June 7, 2011.

18.     The maturity date for each of the Notes was June 6, 2013.

19.     FEP failed to satisfy both its obligation to pay annual interest on the Notes to the note holders and to repay all principal and accrued interest by June 6, 2013.

20.     Weiss first met Silber in or around the spring of 2012 through their mutual involvement in certain philanthropic activities.

21.     Over time Weiss and Silber began to discuss ways they might conduct business together, and in or about May of 2013 Weiss approached Silber concerning FEP's obligations under the Notes.

-4-

22.     Weiss complained to Silber that the holders of the Notes were pressuring him for immediate payment and that he needed to refinance that debt.

23.     So Weiss began soliciting Silber to refinance the debt and in that context represented to Silber that FEP, Mosaic and Weiss' other affiliated businesses were thriving but that a short-term lack of liquidity temporarily impeded his ability to repay the Notes by their maturity date.

24.     In soliciting Silber to purchase the Class C Units and Notes from the original holders, Weiss intentionally misrepresented material facts and omitted to disclose material facts to Silber concerning: (a) FEP's true financial condition and ability to repay or refinance the principal and accrued interest on the Notes; and (b) the existence of litigation which the defendants knew or should have known had and would continue to have a material adverse effect on the value of the Class C Units and on FEP's ability to repay the Notes.

25.     Upon information and belief, Weiss made such misrepresentations primarily and substantially from within Massachusetts.

26.     At the same time, Weiss touted to Silber his plans to purchase the registered investment advisor ICC Capital Management through Mosaic, offering Silber an opportunity to participate in that transaction as well.

27.     On June 9, 2013, Weiss even provided Silber with a copy of a loan commitment letter from First Republic Bank dated May 8, 2013 for $10 million in the aggregate. The stated purpose of the $6 million term loan included as a part of that $10 million commitment was "to provide funding for the refinancing of [FEP] debt and [Mosaic's] acquisition of ICC Capital Management, Inc.".

28. Upon information and belief, Weiss knew or should have known that First Republic Bank would not loan FEP $6 million to refinance its debts, but he provided the commitment letter to Silber in order to mislead him concerning the ability of Weiss to obtain bank financing for his entities.

29. Weiss also failed to disclose to Silber that he and FEP had been sued on July 17, 2013 by clients in a proceeding before the American Arbitration Association seeking approximately $20 million in damages for fraud and related claims arising from the defendants' investment recommendations and self-dealing (the "Client Fraud Arbitration").

30. Weiss further failed to disclose to Silber that, as known by Weiss, the costs to defend the Client Fraud Arbitration and the probability that the plaintiffs would recover significant damages were expected to have a material adverse impact on FEP's business and finances.

31. In fact, on or about April 14, 2015, the arbitrator in the Client Fraud Arbitration issued an award against Weiss and FEP in excess of $48 million, including some $30 million in punitive damages for their knowing fraud, misrepresentations, and breach of fiduciary duty.

32. Instead, Weiss informed Silber that he had personally negotiated with the holders of the Class C Units and Notes, including those whom he referred to as the "trouble group", to sell Silber their Class C Units and Notes at a significant discount, so long as Silber swiftly paid the aggregate consideration equal to the principal amount of the Notes (i.e., $750,000), plus certain costs.

33. On or about August 6, 2013, Weiss represented to Silber that he would "pay all of the notes off by the end of the year through my Mosaic entity and have FEP be a full owned sub of Mosaic."

34.     Weiss thus assured Silber that, upon closing, he would own Notes worth at least $975,000, entitling Silber to an immediate return of approximately 30%.

35.     In reliance upon Weiss' specific representations and assurances, on or about August 23, 2013, Silber purchased the 160.555 Class C Units and the Notes from the individual holders pursuant to separate Assignment of Promissory Note Agreements with each note holder (collectively, the "Assignment Agreements").

36.     FEP was also a party to each Assignment Agreement with Weiss signing on its behalf as managing partner.

37.     By their express terms, each of the Assignment Agreements is deemed to have been negotiated, executed, and delivered in Delaware.

38.     In connection with the sale to Silber of the Class C Units and Notes, Weiss, on behalf of FEP, also entered into an Indemnification Agreement with Silber dated August 23, 2013.

39.     Weiss acknowledged in the Indemnification Agreement that assignment of the Notes would confer a benefit on FEP and therefore, in order to induce Silber to purchase the Notes, it agreed to indemnify and hold Silber harmless from losses arising from any breach of a representation or warranty made by the assignors in the Assignment Agreements or from litigation by third parties arising out of ownership of the Notes or Class C Units.

40.     By its terms the Indemnification Agreement is deemed to have been negotiated, executed and delivered in Delaware.

41.     Silber was not provided any partnership documents related to the Class C Units of FEP he purchased.

42.     Following Silber's purchase of the Class C Units and Notes, Weiss induced Silber to invest an additional $900,000 in Mosaic and $100,000 for the purchase of a number of cigarette/cigar brands.

43.     Silber gave Weiss the additional money based on Weiss' false assurances that he and his entities were simply waiting for significant funds from the payment of earned performance fees and committed capital investments.

44.     At all times relevant to the allegations herein, Weiss lumped FEP and Mosaic together in his explanations to Silber of how debts of any one of the entities would be repaid.

45.     In the context of a proposed investment by Silber in three other funds Weiss controlled, Weiss admitted to Silber in a November 6, 2013 email, "I have been running a very successful business for many years and since I was the only owner, I did not need to differentiate between business units or funds."

46.     Upon information and belief, Weiss operated FEP and Mosaic as alter egos of one another, including without limitation by comingling funds between the entities, failing to maintain an arm's length relationship among the entities, utilizing common management, diverting company funds for non-company uses, and failing to maintain adequate records or minutes.

47.     Despite multiple demands and Weiss' repeated false representations that payment was pending and/or would be made at certain dates from late 2013 through and into early 2015, the defendants have failed and refused to make any payments owing under the Notes.

48.     For example, on December 24, 2013, Weiss emailed Silber from his Mosaic email account, lweiss@mosaicip.com, and stated he had applied for a bank line of credit to allow him to repay the Notes quickly.

-8-

49.     Thereafter, on February 14, 2014, Weiss emailed Silber (again using his Mosaic email account) and represented that he had been able to raise capital that would allow him to repay Silber $900,000 (ostensibly for the funds Silber gave him for Mosaic) by March 31, 2014, with the remainder owing under the Notes to be paid by July 1, 2014.

50.     On March 28, 2014, Mosaic did repay Silber $900,000.

51.     With respect to the amount owing under the Notes, Weiss stated in an August 21, 2014 email to Silber, "We can make a $500,000 payment on Sept 15th and the remainder on October 15th. I hope this will work for you and we can both move forward."

52.     On September 16, 2014, Silber requested confirmation from Weiss that "you kept your promise and wired in the first repayment of $500,000."

53.     Weiss responded to Silber a few hours later stating, "Do [sic] to the approaching Shmitah year, I need to accelerate the payments and have a final payment for you next week. I will have my team finish the calculations and please have your team due [sic] the same."

54.     Nevertheless, by a week later the defendants still had not made any payment to Silber. Therefore, on September 22, 2014, Silber again emailed Weiss demanding payment.

55.     Weiss responded two days later, on September 24, 2014, stating, "We have setup a wire for $1,058,020.85. This includes interest through the end of September. Thank you for all of your help and friendship."

56.     Continuing Weiss' pattern of deception, Silber did not receive any payment whatsoever from the defendants.

57.     To this date, the full principal and all accrued interest on the Notes remain unpaid and in default.

58.     In addition, though Silber has asked for copies of the relevant partnership

documents and an accounting for the ownership stake he acquired in the Class C Units in FEP,

the defendants have failed and refused to respond to Silber's request.

## COUNT I
## Action on Promissory Notes against FEP

59.     Silber incorporates by reference the preceding paragraphs as if fully set forth

herein.

60.     FEP is separately indebted to Silber under each of the Notes set forth above.

61.     FEP has and continues to be in default under each of the Notes by failing to pay

the outstanding principal and interest in accordance with the terms of the Notes.

62.     Despite demand, FEP has failed and refused to remedy its default.

63.     By virtue of the foregoing, FEP is liable to Silber for the aggregate principal

amount of $750,000 under the Notes, plus accrued interest, as well as attorneys' and other fees

and costs as provided in the Notes.

## COUNT II
## Breach of Contract against FEP

64.     Silber incorporates by reference the preceding paragraphs as if fully set forth

herein.

65.     Each of the Notes constitutes a valid contract pursuant to which FEP agreed to

reimburse Silber for the full principal value of the loans, plus accrued interests and costs.

66.     By virtue of the conduct described above FEP has breached its obligations to

Silber under each of the Notes.

67.     As a direct and proximate result of FEP's wrongful conduct, Silber has been

damaged in an amount to be determined at trial, but in no event less than the $750,000 aggregate

principal due, plus accrued interest, as well as attorneys' and other fees and costs as provided in
the Notes.

## COUNT III
## Promissory Estoppel vs. Weiss and Mosaic

68.     Silber incorporates by reference the preceding paragraphs as if fully set forth
herein.

69.     Weiss, acting in his individual capacity and as an agent of Mosaic, in order to
induce Silber to purchase the Notes issued by FEP, promised Silber that he would pay in full the
Note obligations to Silber through Mosaic by the end of 2013.

70.     Weiss and Mosaic caused Silber to take reasonable action and alter his position to
his detriment in reliance upon their material representations resulting in substantial damage to
Silber.

71.     Silber has suffered and continues to suffer a substantial detriment and economic
loss in having relied on Weiss' and Mosaic's false promises.  Therefore, injustice can be avoided
only by enforcing the Note repayment obligations to Silber as against Weiss and Mosaic.

## COUNT IV
## Fraud vs. Weiss and FEP

72.     Silber incorporates by reference the preceding paragraphs as if fully set forth
herein.

73.     In soliciting Silber to purchase the Class C Units in FEP and take assignment of
the Notes from the original holders, Weiss and FEP failed to disclose the true nature and extent
of FEP's (and Mosaic's) financial troubles, lack of adequate capitalization, and ability to repay
the Notes by the end of 2013, as promised.

74.     Weiss and FEP also failed to disclose, in response to Silber's requests for information concerning FEP's business, that Weiss and FEP had been sued only one month prior for more than $20 million in damages by other investors.

75.     Weiss and FEP knew or should have known that the lawsuit was likely to result in a significant award of damages and that such award and the defense of the lawsuit would have a material adverse impact on FEP's cash flow, the value of the Class C Units and ability to repay the Note obligations in accordance with their representations and promises.

76.     By engaging in the foregoing conduct, FEP and Weiss committed fraud and willfully violated §§10(b) and 20(a) of the Securities and Exchange Act of 1934, 48 Stat. 891, 15 U.S.C. §§78j(b) and 78t(a), and SEC Rule 10b-5, 17 CFR §240.10b-5 (2009), promulgated pursuant to §10(b).

77.     By reason of these actions Silber has been injured in an amount to be determined at trial.

### COUNT V
### Violation of Mass. Gen. Laws c. 93A §11 vs. Weiss

78.     Silber incorporates by reference the preceding paragraphs as if fully set forth herein.

79.     The aforesaid conduct of Weiss, including but not limited to his knowing material misrepresentations and omissions to Silber in the course of soliciting the business transactions relating to the Class C Units and Note purchases and other investments in his businesses, and his stringing Silber along with multiple false promises of imminent repayment, constitute unfair and deceptive acts and practices in violation of M.G.L. c. 93A §§2, 11.

80.     Weiss committed the aforesaid deceptive conduct intended to induce Silber into making the various investments primarily and substantially within the Commonwealth of Massachusetts.

81.     Weiss' violations of M.G.L. c. 93A were knowing and deliberate.

82.     By virtue of Weiss' violations of M.G.L. c. 93A, Weiss is liable to Silber in an amount to be determined at trial, together with multiple damages, interest, costs and attorneys' fees.

**COUNT VI**
**Demand for Accounting vs. FEP**

83.     Silber incorporates by reference the preceding paragraphs as if fully set forth herein.

84.     In reliance upon Weiss' material misrepresentations and omissions, Silber acquired and currently owns 160.555 Class C Units in FEP.

85.     Despite demand, FEP has failed and refused to provide any accounting of the assets, liabilities, and finances of FEP.

86.     Silber requests a full and detailed accounting with respect to Silber's Class C Units, including any distributions that should have been made thereon and an award of all such monies owed.

**RELIEF REQUESTED**

WHEREFORE, Silber respectfully requests judgment as follows:

1.     On Count I, in favor of Silber and against FEP as follows:

    a.  On the Krause Note, $100,000 of outstanding principal, plus accrued interest;

    b.  On the Glazer Note, $100,000 of outstanding principal, plus accrued interest;

    c.  On the Rash Note, $100,000 of outstanding principal, plus accrued interest;

      d.  On the Fink Note, $300,000 of outstanding principal, plus accrued interest;

      e.  On the Feinman Note, $150,000 of outstanding principal, plus accrued interest;

      f.  Silber's attorneys' fees and costs as provided by each of the Notes; and

2.     On each of Counts II through Count V,  in favor of Silber and against the defendants for monetary relief in an amount to be proven at trial;

3.     On Count VI, in favor of Silber ordering defendant FEP to provide a full accounting with respect to Silber's Class C Units and awarding Silber all amounts owing in respect of Silber's Class C Units;

4.     For a declaration that Mosaic is the alter ego of FEP and, as such, is jointly and severally liable for all sums adjudged against FEP;

5.     For prejudgment and post-judgment interest;

6.     For attorneys' fees and other appropriate expenses, as provided under the Notes, and M.G.L. c. 93A;

7.     For multiple damages pursuant to M.G.L. c. 93A; and

8.     For such other and further relief as the court may deem just and proper.

## DEMAND FOR JURY TRIAL

Silber demands a jury trial on all issues so triable.

Dated:  May 1, 2015                    Respectfully submitted,

                                       ALLAN SILBER
                                       By his counsel,

                                       David M. Belcher  (BBO 636680)
                                       Christine R. Fitzgerald (BBO 637906)
                                       **BELCHER FITZGERALD LLP**
                                       Two Oliver St., Suite 302
                                       Boston, MA 02110
                                       (617) 368-6890
                                       (617) 368-6891 (fax)
                                       dbelcher@belcherfitzgerald.com
                                       cfitzgerald@belcherfitzgerald.com

## **VERIFICATION**

I, Allan Silber, do hereby depose and state that I have read the foregoing Verified Complaint and that the allegations set forth therein are true and correct, except for the allegations made upon information and belief, which allegations I believe to be true.

Signed under the penalties of perjury.

Dated: May __1__, 2015          Allan Silber

16